## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GABBY KLEIN, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| v. | **DEMAND FOR JURY TRIAL** |
| TEVA PHARMACEUTICAL INDUSTRIES LIMITED, EREZ VIGODMAN, EYAL DESHEH, and KOBI ALTMAN, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Gabby Klein ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her complaint against Defendants, alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Teva Pharmaceutical Industries Limited ("Teva" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Teva's American Depositary Receipts ("ADRs") between February 10, 2014 and November 2, 2016, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Teva develops, manufactures, markets, and distributes generic medicines and a portfolio of specialty medicines worldwide.  Teva is the largest generic drug manufacturer in the world and one of the 15 largest pharmaceutical companies worldwide.  The Company was founded in 1901 and is headquartered in Petah Tikva, Israel.  Teva's ADRs trade on the New York Stock Exchange ("NYSE") under the ticker symbol "TEVA".

3.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Teva and several of its pharmaceutical industry peers colluded to fix generic drug prices; (ii) the foregoing conduct constituted a violation of federal antitrust laws; (iii) consequently, Teva's revenues during the Class Period were in part the result of illegal conduct; and (iv) as a result of the foregoing, Teva's public statements were materially false and misleading at all relevant times.

4.      On November 3, 2016, media outlets reported that U.S. prosecutors might file criminal charges by the end of 2016 against Teva and several other pharmaceutical companies for unlawfully colluding to fix generic drug prices.  In an article titled "U.S. Charges in Generic-Drug Probe to Be Filed by Year-End," *Bloomberg* reported, in relevant part:

2

U.S. prosecutors are bearing down on generic pharmaceutical companies in a sweeping criminal investigation into suspected price collusion, a fresh challenge for an industry that's already reeling from public outrage over the spiraling costs of some medicines.

The antitrust investigation by the Justice Department, begun about two years ago, now spans more than a dozen companies and about two dozen drugs, according to people familiar with the matter. The grand jury probe is examining whether some executives agreed with one another to raise prices, and the first charges could emerge by the end of the year, they said.

Though individual companies have made various disclosures about the inquiry, they have identified only a handful of drugs under scrutiny, including a heart treatment and an antibiotic. Among the drugmakers to have received subpoenas are industry giants Mylan NV and Teva Pharmaceutical Industries Ltd. Other companies include Actavis, which Teva bought from Allergan Plc in August, Lannett Co., Impax Laboratories Inc., Covis Pharma Holdings Sarl, Sun Pharmaceutical Industries Ltd., Mayne Pharma Group Ltd., Endo International Plc's subsidiary Par Pharmaceutical Holdings and Taro Pharmaceutical Industries Ltd.

All of the companies have said they are cooperating except Covis, which said last year it was unable to assess the outcome of the investigation.

5.      On this news, Teva's ADR price fell $4.13, or 9.53%, to close at $39.20 on November 3, 2016.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's ADRs, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

3

9.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as Teva's ADRs trade on the NYSE, located within this Judicial District.

10.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

11.     Plaintiff, as set forth in the attached Certification, acquired Teva ADRs at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

12.     Defendant Teva is incorporated in Israel, and the Company's principal executive offices are located at 5 Basel Street, P.O. Box 3190, Petah Tikva 4951033, Israel.  Teva's ADRs trade on the NYSE under the ticker symbol "TEVA."

13.     Defendant Erez Vigodman ("Vigodman") has served as Teva's Chief Executive Officer ("CEO") and President since February 11, 2014.

14.     Defendant Eyal Desheh ("Desheh") has served as Teva's Chief Financial Officer ("CFO") and Group Executive Vice President at all relevant times, with the exception of October 30, 2013 to February 11, 2014, during which time he served as the Company's Interim CEO and Interim President.

15.     Defendant Kobi Altman ("Altman") served as Teva's Acting CFO from October 21, 2013 to February 11, 2014.

16.     The Defendants referenced above in ¶¶ 13-15 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Teva develops, manufactures, markets, and distributes generic medicines and a portfolio of specialty medicines worldwide. Teva is the largest generic drug manufacturer in the world and one of the 15 largest pharmaceutical companies worldwide. The Company was founded in 1901 and is headquartered in Petah Tikva, Israel.

### Materially False and Misleading Statements Issued During the Class Period

18.     The Class Period begins on February 10, 2014, when Teva filed an Annual Report for the quarter and year ended December 31, 2013 on Form 20-F with the SEC (the "2013 20-F"). For the quarter, Teva reported net income of $380 million, or $0.45 per diluted share, on revenue of $5.43 billion, compared to net income of $320 million, or $0.37 per diluted share, on revenue of $5.25 billion for the same period in the prior year. For 2013, Teva reported net income of $1.27 billion, or $1.49 per diluted share, on revenue of $20.31 billion, compared to net income of $1.96 billion, or $2.25 per diluted share, on revenue of $20.32 billion for 2012.

19.     In the 2013 20-F, Teva stated, in relevant part:

We are the leading generic drug company in the United States. We market approximately 375 generic products in more than 1,100 dosage strengths and packaging sizes, including oral, injectables and inhaled products. We believe that the breadth of our product portfolio provides us with a strategic advantage, particularly as consolidation continues among purchasers, including large drugstore chains, wholesaling organizations, buying groups and managed care providers. Our growth strategy focuses on complex generic products that provide added value to our patients and customers, utilizing new and advanced technologies.

*Marketing and Sales.* In the United States, our wholesale and retail selling efforts are supported by advertising in professional journals and leading pharmacy websites, as well as participating in key medical and pharmaceutical conferences. We continue to strengthen consumer awareness about the benefits of generics through partnerships and digital marketing programs.

A substantial majority of our U.S. generic sales are made to retail drug chains and wholesalers, which continue to undergo significant consolidation and globalization.

Our customer-centric approach to research and development, sales, and operations, has provided mutual strategic advantages to our customers. We are committed to the success of our customers in this segment and focus closely on them as important business partners.

*Competitive Landscape.* In the United States, we are subject to intense competition in the generic drug market from other domestic and foreign generic drug manufacturers, brand-name pharmaceutical companies through lifecycle management initiatives, authorized generics, existing brand equivalents and manufacturers of therapeutically similar drugs. Price competition from additional generic versions of the same product typically results in margin pressures. ***We believe that our primary competitive advantages are our ability to continually introduce new and complex generic equivalents for brand-name drug products on a timely basis, our quality and cost-effective production, our customer service and the breadth of our product line. We believe we have a focused and competitive pricing strategy.***

(Emphasis added.)

20.    The 2013 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Desheh and Altman, stating that the financial information contained in the 2013 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

21.    On May 2, 2014, Teva filed a report on Form 6-K with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2014 (the "Q1 2014 6-K").  For the quarter, Teva reported net income of $744 million, or $0.87 per diluted share, on revenue of $5 billion, compared to net income of $630 million, or $0.74 per diluted share, on revenue of $4.9 billion for the same period in the prior year.

22.    In the Q1 2014 6-K, Teva stated, in part:

**United States Generic Medicine Revenues**

In the first quarter of 2014, we led the U.S. generic market in total prescriptions and new prescriptions, with total prescriptions of approximately 512 million, representing 15.0% of total U.S. generic prescriptions. We intend to continue our U.S. market leadership based on our ability to introduce new generic equivalents for brand-name products on a timely basis, with a focus on complex generics and other high-barrier products that we believe will create more value for patients and

customers, our strong emphasis on customer service, the breadth of our product line, our commitment to quality and regulatory compliance and cost-effective production.

23.     On July 31, 2014, Teva filed a report on Form 6-K with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2014 (the "Q2 2014 6-K"). For the quarter, Teva reported net income of $748 million, or $0.87 per diluted share, on revenue of $5.05 billion, compared to a net loss of $452 million, or $0.53 per diluted share, on revenue of $4.92 billion for the same period in the prior year.

24.     In the Q2 2014 6-K, Teva stated, in part:

**United States Generic Medicine Revenues**

In the second quarter of 2014, we led the U.S. generic market in total prescriptions and new prescriptions, with total prescriptions of approximately 508 million, representing 14.7% of total U.S. generic prescriptions. We intend to continue our U.S. market leadership based on our ability to introduce new generic equivalents for brand-name products on a timely basis, with a focus on complex generics and other high-barrier products that we believe will create more value for patients and customers, our strong emphasis on customer service, the breadth of our product line, our commitment to quality and regulatory compliance and cost-effective production.

25.     On October 30, 2014, Teva filed a report on Form 6-K with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2014 (the "Q3 2014 6-K"). For the quarter, Teva reported net income of $876 million, or $1.02 per diluted share, on revenue of $5.06 billion, compared to net income of $711 million, or $0.84 per diluted share, on revenue of $5.06 billion for the same period in the prior year.

26.     In the Q3 2014 6-K, Teva stated, in part:

**United States Generic Medicine Revenues**

In the third quarter of 2014, we led the U.S. generic market in total prescriptions and new prescriptions, with total prescriptions of approximately 504 million, representing 14.4% of total U.S. generic prescriptions. We intend to continue our U.S. market leadership based on our ability to introduce new generic equivalents

for brand-name products on a timely basis, with a focus on complex generics and other high-barrier products that we believe will create more value for patients and customers, our strong emphasis on customer service, the breadth of our product line, our commitment to quality and regulatory compliance and cost-effective production.

27.     On February 9, 2015, Teva filed an Annual Report for the quarter and year ended December 31, 2014 on Form 20-F with the SEC (the "2014 20-F"). For the quarter, Teva reported net income of $687 million, or $0.80 per diluted share, on revenue of $5.17 billion, compared to net income of $380 million, or $0.45 per diluted share, on revenue of $5.43 billion for the same period in the prior year. For 2014, Teva reported net income of $3.06 billion, or $3.56 per diluted share, on revenue of $20.27 billion, compared to net income of $1.27 billion, or $1.49 per diluted share, on revenue of $20.31 billion for 2013.

28.     In the 2014 20-F, Teva stated, in relevant part:

We are the leading generic drug company in the United States. We market approximately 375 generic products in more than 1,100 dosage strengths and packaging sizes, including oral, injectables and inhaled products. We believe that the breadth of our product portfolio provides us with a strategic advantage, particularly as consolidation continues among purchasers, including large drugstore chains, wholesaling organizations and buying groups. Our growth strategy focuses on a carefully selected portfolio of products that will provide added value to our customers, payors and patients, utilizing new and advanced technologies.

In the United States, we are subject to intense competition in the generic drug market from domestic and international generic drug manufacturers, brand-name pharmaceutical companies through lifecycle management initiatives, authorized generics, existing brand equivalents and manufacturers of therapeutically similar drugs. Price competition from additional generic versions of the same product typically results in margin pressures. *We believe that our primary competitive advantages are our ability to continually introduce new and complex generic equivalents for brand-name drug products on a timely basis, our quality, our customer service and the breadth of our product portfolio. We believe we have a focused and competitive pricing strategy.*

A substantial majority of our U.S. generic sales are made to retail drug chains and wholesalers, which continue to undergo significant consolidation and globalization. Our portfolio selection, breadth of products offerings and our global network capabilities, have provided mutual strategic advantages to our customers. We are

committed to the success of our customers and work closely with them as important business partners.

In the United States, our wholesale and retail selling efforts are supported by advertising in professional journals and on leading pharmacy websites, as well as participating in key medical and pharmaceutical conferences. We continue to strengthen consumer awareness of the benefits of generics through partnerships and digital marketing programs.

(Emphasis added.)

29.     The 2014 20-F contained signed certifications pursuant to SOX by Defendants Vigodman and Desheh, stating that the financial information contained in the 2014 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

30.     On April 30, 2015, Teva filed a report on Form 6-K with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2015 (the "Q1 2015 6-K").  For the quarter, Teva reported net income of $446 million, or $0.52 per diluted share, on revenue of $4.98 billion, compared to net income of $744 million, or $0.87 per diluted share, on revenue of $5 billion for the same period in the prior year.

31.     In the Q1 2015 6-K, Teva stated, in part:

**United States Generic Medicine Revenues**

In the first quarter of 2015, we continued to lead the U.S. generic market in total prescriptions and new prescriptions, with total prescriptions of approximately 488 million, representing 13.7% of total U.S. generic prescriptions. We seek to continue our U.S. market leadership by introducing new generic equivalents for brand-name products on a timely basis, with a focus on complex generics and other high-barrier products that we believe will create more value for patients and customers, our strong emphasis on customer service, the breadth of our product line, our commitment to quality and regulatory compliance and our cost-effective production.

32.     On July 30, 2015, Teva filed a report on Form 6-K with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2015 (the "Q2 2015

6-K").  For the quarter, Teva reported net income of $539 million, or $0.63 per diluted share, on revenue of $4.97 billion, compared to net income of $748 million, or $0.87 per diluted share, on revenue of $5.05 billion for the same period in the prior year.

33.     In the Q2 2015 6-K, Teva stated, in part:

***United States Generic Medicine Revenues***

In the second quarter of 2015, we continued to lead the U.S. generic market in total prescriptions and new prescriptions, with total prescriptions of approximately 483 million, representing 13.5% of total U.S. generic prescriptions. We seek to continue our U.S. market leadership by introducing new generic equivalents for brand-name products on a timely basis, with a focus on complex generics and other high-barrier products that we believe will create more value for patients and customers, our strong emphasis on customer service, our broad product line, our commitment to quality and regulatory compliance and our cost-effective production.

34.     On October 29, 2015, Teva filed a report on Form 6-K with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2015 (the "Q3 2015 6-K").  For the quarter, Teva reported net income of $103 million, or $0.12 per diluted share, on revenue of $4.82 billion, compared to net income of $876 million, or $1.02 per diluted share, on revenue of $5.06 billion for the same period in the prior year.

35.     In the Q3 2015 6-K, Teva stated, in part:

***United States Generic Medicine Revenues***

In the third quarter of 2015, we continued to lead the U.S. generic market in total prescriptions and new prescriptions, with approximately 481 million total prescriptions, representing 13.4% of total U.S. generic prescriptions. We seek to continue our U.S. market leadership by introducing new generic equivalents for brand-name products on a timely basis, with a focus on complex generics and other high-barrier products that we believe will create more value for patients and customers, our strong emphasis on customer service, our broad product line, our commitment to quality and regulatory compliance and our cost-effective production.

36.     On February 11, 2016, Teva filed an Annual Report for the quarter and year ended December 31, 2014 on Form 20-F with the SEC (the "2015 20-F").  For the quarter, Teva reported

net income of $500 million, or $0.55 per diluted share, on revenue of $4.88 billion, compared to net income of $687 million, or $0.80 per diluted share, on revenue of $5.17 billion for the same period in the prior year.  For 2015, Teva reported net income of $1.59 billion, or $1.82 per diluted share, on revenue of $19.65 billion, compared to net income of $3.06 billion, or $3.56 per diluted share, on revenue of $20.27 billion for 2014.

37.     In the 2015 20-F, Teva stated, in relevant part:

We are the leading generic drug company in the United States. We market approximately 370 generic products in more than 1,100 dosage strengths and packaging sizes, including oral, injectable and inhaled products. We believe that the breadth of our product portfolio provides us with a strategic advantage, particularly as consolidation continues among purchasers, including large drugstore chains, wholesaling organizations and buying groups. Our growth strategy focuses on a portfolio of products that will provide added value to our customers, payors and patients, utilizing new and advanced technologies.

In the United States, we are subject to intense competition in the generic drug market from domestic and international generic drug manufacturers, brand-name pharmaceutical companies through lifecycle management initiatives, authorized generics, existing brand equivalents and manufacturers of therapeutically similar drugs. Price competition from additional generic versions of the same product typically results in margin pressures. ***We believe that our primary competitive advantages are our ability to continually introduce new and complex generic equivalents for brand-name drug products on a timely basis, our quality, our customer service and the breadth of our product portfolio. We believe we have a focused and competitive pricing strategy.***

A substantial majority of our U.S. generic sales are made to retail drug chains and wholesalers, which continue to undergo significant consolidation and globalization. Our portfolio selection, breadth of products offerings and our global network capabilities, have provided mutual strategic advantages to our customers. We are committed to the success of our customers and work closely with them as important business partners.

In the United States, our wholesale and retail selling efforts are supported by advertising in professional journals and on leading pharmacy websites, as well as participating in key medical and pharmaceutical conferences. We continue to strengthen consumer awareness of the benefits of generics through partnerships and digital marketing programs.

(Emphasis added.)

11

38.     The 2015 20-F contained signed certifications pursuant to SOX by Defendants Vigodman and Desheh, stating that the financial information contained in the 2015 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

39.     On May 9, 2016, Teva filed a report on Form 6-K with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 6-K").  For the quarter, Teva reported net income of $636 million, or $0.62 per diluted share, on revenue of $4.81 billion, compared to net income of $446 million, or $0.52 per diluted share, on revenue of $4.98 billion for the same period in the prior year.

40.     In the Q1 2016 6-K, Teva stated, in part:

*United States Generic Medicines Revenues*

In the first quarter of 2016, we continued to lead the U.S. generic market in total prescriptions and new prescriptions, with approximately 463 million total prescriptions, representing 12.7% of total U.S. generic prescriptions. We seek to continue our U.S. market leadership based on our ability to introduce new generic equivalents for brand-name products on a timely basis, with a focus on complex generics and other high-barrier products that we believe will create more value for patients and customers, our strong emphasis on customer service, the breadth of our product line, our commitment to quality and regulatory compliance and our cost-effective production, including through our pending acquisition of Actavis Generics.

41.     On August 4, 2016, Teva filed a report on Form 6-K with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2016 (the "Q2 2016 6-K").  For the quarter, Teva reported net income of $254 million, or $0.20 per diluted share, on revenue of $5.04 billion, compared to net income of $539 million, or $0.63 per diluted share, on revenue of $4.97 billion for the same period in the prior year.

42.     In the Q2 2016 6-K, Teva stated, in part:

*United States Generic Medicine Revenues*

12

In the second quarter of 2016, we continued to lead the U.S. generic market in total prescriptions and new prescriptions, with approximately 446 million total prescriptions, representing 12.1% of total U.S. generic prescriptions. We seek to continue our U.S. market leadership based on our ability to introduce new generic equivalents for brand-name products on a timely basis, with a focus on complex generics and other high-barrier products that we believe will create more value for patients and customers, our strong emphasis on customer service, the breadth of our product line, our commitment to quality and regulatory compliance and our cost-effective production, including through our recent acquisition of Actavis Generics, which will substantially expand our generics operations and pipeline.

43.     The statements referenced in ¶¶ 18-42 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Teva and several of its pharmaceutical industry peers colluded to fix generic drug prices; (ii) the foregoing conduct constituted a violation of federal antitrust laws; (iii) consequently, Teva's revenues during the Class Period were in part the result of illegal conduct; and (iv) as a result of the foregoing, Teva's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

44.     On November 3, 2016, media outlets reported that U.S. prosecutors may file criminal charges by the end of 2016 against Teva and several other pharmaceutical companies for unlawfully colluding to fix generic drug prices.  The *Wall Street Journal* reported, in relevant part:

Federal prosecutors, after a lengthy probe, are nearing possible criminal charges for price-collusion in the generic-drug industry, according to a person familiar with the matter.

The U.S. Justice Department could begin to bring cases before year's end, though the timing of any potential enforcement actions remains uncertain, according to the person familiar with the matter.

The specific companies that are a focus of the investigation weren't immediately known. However, the Justice Department has sent subpoenas to several manufacturers of generic drugs and to some individual executives, seeking

information about product pricing and "communications with competitors," according to the companies' filings with the Securities and Exchange Commission over the past two years.

Those companies include Teva Pharmaceutical Industries Ltd.; Mylan NV; Dr. Reddy's Laboratories; Taro Pharmaceuticals; Endo International PLC; and Actavis, which Allergan PLC recently sold to Teva.

45.     On this news, Teva's ADR price fell $4.13, or 9.53%, to close at $39.20 on November 3, 2016.

46.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's ADRs, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Teva ADRs during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

48.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Teva ADRs were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Teva or its transfer agent and may be notified of the

14

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

49.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

50.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

51.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Teva;

- whether the Individual Defendants caused Teva to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Teva ADRs during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

52.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

53.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Teva ADRs are traded in an efficient market;

- the Company's ADRs were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's ADRs; and

- Plaintiff and members of the Class purchased, acquired and/or sold Teva ADRs between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

54.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

55.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

56.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

58.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Teva ADRs; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Teva ADRs and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

59.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Teva ADRs.  Such reports, filings, releases and statements were materially

false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Teva's business practices.

60.    By virtue of their positions at Teva, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

61.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Teva, the Individual Defendants had knowledge of the details of Teva's internal affairs.

62.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Teva.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Teva's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Teva ADRs was artificially inflated throughout the Class Period.  In ignorance of the adverse facts

concerning Teva's business practices which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Teva ADRs at artificially inflated prices and relied upon the price of the ADRs, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

63.     During the Class Period, Teva ADRs were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired Teva ADRs at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Teva ADRs was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Teva ADRs declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

64.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

65.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's ADRs during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

66.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

67.     During the Class Period, the Individual Defendants participated in the operation and management of Teva, and conducted and participated, directly and indirectly, in the conduct of Teva's business affairs.  Because of their senior positions, they knew the adverse non-public information about Teva's business practices.

68.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Teva's business practices, and to correct promptly any public statements issued by Teva which had become materially false or misleading.

69.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Teva disseminated in the marketplace during the Class Period concerning Teva's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Teva to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Teva within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Teva ADRs.

70.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Teva.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  November 10, 2016                     Respectfully submitted,

                                              **POMERANTZ LLP**

                                              */s/ Jeremy A. Lieberman*
                                              Jeremy A. Lieberman
                                              J. Alexander Hood II
                                              Marc C. Gorrie
                                              600 Third Avenue, 20th Floor
                                              New York, New York 10016
                                              Telephone:  (212) 661-1100
                                              Facsimile:  (212) 661-8665
                                              Email:  jalieberman@pomlaw.com
                                                         ahood@pomlaw.com
                                                         mgorrie@pomlaw.com

                                              **POMERANTZ LLP**
                                              Patrick V. Dahlstrom
                                              10 South La Salle Street, Suite 3505
                                              Chicago, Illinois 60603
                                              Telephone:  (312) 377-1181
                                              Facsimile:  (312) 377-1184
                                              Email:  pdahlstrom@pomlaw.com

                                              *Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I, Gabby Klein, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Teva Pharmaceutical Industries Limited ("Teva" or the "Company") and authorize the filing of a motion on my behalf for appointment as lead plaintiff.

3.      I did not purchase or acquire Teva securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Teva securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      To the best of my current knowledge, the attached sheet lists all of my transactions in Teva securities during the Class Period.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.      I declare under penalty of perjury that the foregoing is true and correct.

**Executed**  __11 | 7 | 2016_____
               **(Date)**

                                                       _____
                                                         **(Signature)**

                                        Gabby  Klein_____
                                          **(Type or Print Name)**

**TEVA PHARMACEUTICAL INDUSTRIES LIMITED (TEVA)**                    **Klein, Gabby**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|---|---|---|---|
| **Common Stock** | | | |
| 8/15/2016 | Purchase | 100 | $54.4600 |
| 8/15/2016 | Purchase | 100 | $54.4400 |
| **Call Option** | | | |
| 8/15/2016 | Sale | 1 | $1.5749 |